**In the Interest of A.T.H., a minor.**

**T.L.H., Petitioner–Respondent,**

v.

**Cyrus O. Pope, Respondent–Appellant.**

**No. 23501.**

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 21, 2001.

Frank A. Anzalone and Judy A. McKinsey Ryder, Clayton, Attorneys for Appellant.

No Appearance for Respondent.

GARRISON, Judge.

T.L.H. ("Mother"), as parent and natural guardian of her daughter, A.T.H. ("Daughter"), filed a petition seeking relief under Sections 455.500–455.538, RSMo, known as the "Child Protection Orders Act" (the "Act"). The trial court entered an Ex Parte Order of Child Protection against Cyrus O. Pope ("Appellant"), and after a subsequent hearing, entered a Judgment/Full Order of Child Protection. Appellant contests the sufficiency of the petition as well as the evidence.[1]

Mother, as parent of Daughter, filed a verified Petition for Order of Child Protection against Appellant alleging that he was stalking Daughter and that he had sexually, physically, and emotionally abused Daughter. Mother alleged that Daughter "was given alcohol & possibly druged [sic] & sexually assulted [sic] while intoxica[ted]." Mother also stated in her petition that Daughter "works at Sonic & has been told that boys are driveing [sic] thru [sic] & asking for her & not ordering[.] The Sheriffs [sic] Dept has also been receiveing [sic] threats."

After the Ex Parte Order of Child Protection was entered, the trial court held a hearing in February 2000, at which Mother, R.D.H. ("Father"), and Arthur Burton ("Burton"), a court-appointed special advocate, testified. Mother testified that she "felt like [her] daughter was abused by [Appellant]." Mother also stated that, while looking out the kitchen window one night, she saw a car that she thought belonged to Appellant drive by her house. She testified that she could not see if Appellant was driving the vehicle, and admitted that other members of Appellant's family sometimes drove the vehicle. She also testified that the following night, she noticed that the family's fence had been damaged, and that a few weeks later, she was told by someone that Appellant and his friends may have been responsible. Mother also reported that when she, Father, and Appellant were present in the courtroom for Appellant's arraignment in the underlying criminal case for sexual assault, she turned around, looked at Appellant, and Appellant "star[ed]" at her. Mother also testified that Daughter was not present during any of these incidents, and that to her knowledge, Appellant had not had any contact with Daughter since the alleged sexual assault.

Father testified at the hearing, and stated that Daughter had told him that Appellant had sexually assaulted her. Father stated that, to his knowledge, Appellant had never phoned Daughter at her home or tried to otherwise contact her since the alleged sexual assault. Father stated, however, that Appellant "stared [Daughter and him] down" one day when they were driving through town.

Burton testified as a witness on behalf of the guardian ad litem, and stated that he had no information that Appellant had tried to contact Daughter since the alleged criminal incident occurred. Burton stated that he based his recommendation that the full order of protection be issued upon the conversations he had with Daughter, several police detectives, and a police liaison at Daughter's high school, in addition to physician's records of Daughter's medical examination following the alleged sexual assault. He stated that he did not investi-

---

1. Mother has failed to file a brief in connection with this appeal. The failure of a respondent to file a brief on appeal is an imposition on the court and leaves us dependent upon an appellant's presentation and our own research; however, because no penalty is imposed by statute or rule, we proceed to determine the case on its merits. *Massey v. Todd*, 962 S.W.2d 949, 950 n. 2 (Mo.App. S.D.1998).

gate the underlying incident that gave rise to the criminal case.

Following the hearing, the trial court entered its Judgment/Full Order of Child Protection in which it found that Mother had proven the allegations of abuse by preponderance of the evidence. The trial court ordered that Appellant "shall not use, attempt to use, or threaten to use physical force against [Daughter] that would reasonably be expect [sic] to cause bodily injury and shall not stalk, abuse, threaten to abuse, molest or disturb the peace of [Daughter] wherever [Daughter] may be." It further declared that Appellant was not to enter the premises of the family home, Daughter's place of employment, or Daughter's high school.

▇▇▇ As with other court-tried cases, the judgment of the trial court will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Reller v. Hamline*, 895 S.W.2d 659, 660 (Mo.App. W.D.1995), citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The appellate court will defer to the trial court's determinations relating to credibility. *Wallace v. Van Pelt*, 969 S.W.2d 380, 383 (Mo.App. W.D. 1998).

▇▇▇ At the outset, we note that Section 455.516.1 [2] provides that if the petitioner for a full order of protection has proven the allegations of abuse of a child by a preponderance of the evidence, the trial court may issue an order "for a definite period of time, not to exceed one hundred eighty days." In the instant case, the Judgment/Full Order of Protection was entered on February 15, 2000, and provided that it was effective until August 13, 2000, unless sooner terminated or extended. The record here does not indicate that it was extended, and therefore, it apparently has expired by the lapse of time. Although not raised as an issue on appeal, this case could be considered moot for that

reason. An appellate court, however, may decide an otherwise moot issue if it is of general public interest and importance, recurring in nature, and will otherwise evade appellate review. *See State ex rel. Dankelson v. Holt*, 994 S.W.2d 90, 95 (Mo.App. S.D.1999). The applicability of the Act is a matter of general public interest and importance, its applicability under factual situations similar to the one here may well be of a recurring nature, and the issues raised here could evade appellate review due to the necessary lapse of time between the filing of the notice of appeal and when the matter could be decided by an appellate court. Consequently, we will not invoke the mootness doctrine, but will review this case on its merits.

▇▇▇ In his first point on appeal, Appellant alleges that the trial court was without jurisdiction to enter the order of child protection in that under the Act, Appellant was not a "household member" as required by Sections 455.500–455.538, RSMo. In support of his argument, Appellant relies on *Reller*.

In *Reller*, the court held that a petition for an order of child protection must satisfy the jurisdictional requirements of the Act. 895 S.W.2d at 662. At that time, Section 455.505.1, RSMo 1994, provided that an order of child protection may be sought "for a child who has been subject to abuse by a present or former adult household member." There, the petitioner had deleted from the petition the necessary allegation that the respondent was a present or former household member. The court said that because the Act's jurisdictional requirements were not met, it was error for the trial court to take jurisdiction over appellant and the matter. *Id.*

▇▇▇ Since *Reller* was decided, however, Section 455.505.1 has been amended. The current version of the Act now provides that an order of protection may be sought "for a child who has been subject to abuse by a present or former adult household

**2.** All statutory references are to RSMo Cum. Supp.1999, unless otherwise indicated.

member *or person stalking the child.*" (Emphasis added.) While physical, sexual, and emotional abuse are only referred to in the statute in the context of an adult household member, it is clear that the legislature in amending the Act intended to provide a means of seeking relief for the stalking of a child by anyone, and that the protection in that regard was not directed against only household members. *See In Interest of R.T.T.*, 26 S.W.3d 830, 835–36 (Mo.App. S.D.2000), in which this Court held that the amendment to Section 455.505.1 allowed a father to file a petition for an order of protection against the victim's boyfriend for stalking despite the fact that the boyfriend was not a household member. Consequently, although the trial court lacked jurisdiction to enter an order of protection against Appellant, who was not a household member, based on Mother's allegations in her petition concerning sexual, physical, and emotional abuse, the trial court had jurisdiction over Appellant as a result of Mother's allegations concerning the "stalking" of Daughter. This portion of Appellant's point is therefore denied.

■ Appellant also contends in his first point that the trial court lacked jurisdiction to enter the order of protection in that Daughter was not a "victim" as defined in Section 455.501(11), as a "victim" must be "a child who is alleged to have been abused by an adult household member," and there is no allegation here that Appellant was ever a "household member."

The definition of a "victim" under Section 455.501(11) was not amended in 1995 to include a child who is alleged to have been the subject of "stalking." Missouri courts, however, do not presume that the legislature enacts meaningless provisions; therefore, "[w]hen the legislature amends a statute, it is presumed to have intended the amendment to have some effect." *Parrott v. HQ, Inc.*, 907 S.W.2d 236, 240 (Mo.App. S.D.1995). While it would have been clearer had the legislature amended the definition of "victim" in Section

455.501(11) to include a child who has been the subject of stalking, "it is clear that the legislative intent was to provide a means of judicial protection for children who were allegedly abused by present or former adult household members *or* by a person stalking the child." *R.T.T.*, 26 S.W.3d at 836. Daughter, therefore, as the alleged subject of "stalking," fell within the definition of a "victim" under the Act. This portion of Appellant's point is also without merit, and must be denied.

■ In his second point, Appellant contends that even if the trial court did have jurisdiction over Appellant, it erred in granting the order of protection because "there was insufficient evidence to support the allegations in the petition or otherwise."

In regard to Appellant's second point, we note that we will consider the sufficiency of the evidence only as it relates to the "stalking" of Daughter. This is because, as mentioned in point one, Appellant was not a "household member," and, consequently, an order of protection against him could only have resulted from his having "stalked" Daughter.

Pursuant to Section 455.516.1, a full order of protection may be issued if the petitioner has proven the allegation of "stalking" of a child by "a preponderance of the evidence." "Stalking" is defined in Section 455.501(10) as:

> purposely and repeatedly harassing or following with the intent of harassing a child. As used in this subdivision, "harassing" means engaging in a course of conduct directed at a specific child that serves no legitimate purpose, that would cause a reasonable adult to believe the child would suffer substantial emotional distress. As used in this subdivision, "course of conduct" means a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose. Constitutionally protected activity is not

included within the meaning of "course of conduct."

In *Van Pelt*, 969 S.W.2d at 384, the court in interpreting the term "stalking" held that since the legislature used the term "purposely" in defining "stalking," intent is a necessary element.[3] The court further stated that "purposely" is defined as "by design; intentionally; with predetermination," and that the use of the word "purposely" means that it is the intent of the perpetrator that triggers the statute. *Id.*

In the instant case, in order to support a finding that Appellant "stalked" Daughter, it was necessary that Mother show that Appellant purposely and repeatedly harassed Daughter, or that he followed her with the intent of harassing her. The record, however, is devoid of any evidence that would indicate that Appellant "stalked" Daughter.

In the petition for an order of child protection, Mother stated that Daughter "works at Sonic & has been told that boys are driveing [sic] thru [sic] & asking for her & not ordering," and that "[t]he Sheriffs [sic] Dept has also been receiveing [sic] threats." At the hearing, the only evidence presented was that following the filing of the petition, Mother saw a vehicle that looked similar to Appellant's drive by her home one evening. However, she could not see who was in the vehicle and admitted that other members of Appellant's family, including Appellant's brother, sometimes drove the vehicle. Mother also stated that a portion of her family's fence

was damaged, but she did not witness the incident and only heard from someone else that Appellant might be responsible. She also testified that Appellant "star[ed]" at her at his arraignment. Daughter, however, was not present when any of these incidents occurred. At the hearing, Mother, Father, and Burton also testified that, to their knowledge, Appellant had never tried to contact Daughter since the alleged sexual assault.

We cannot conclude from the evidence presented that Daughter was "stalked," and that an order of child protection could have been issued against Appellant. There was no evidence in the record demonstrating that Appellant engaged in a course of conduct in an effort to purposely and repeatedly harass Daughter or that he followed her with the intent of harassing her. In fact, there was no evidence presented showing that Appellant had any direct contact with Daughter following the alleged sexual assault.

The judgment of the trial court is reversed, and the case is remanded for the entry of a judgment consistent with this opinion.

PREWITT, J., and BARNEY, C.J., concur.

---

**3.** *Van Pelt* involved an interpretation of "stalking" under Section 455.010(10), the portion of Chapter 455 relating to adult abuse. However, there are significant similarities between it and the definition of that term under Section 455.501(10).